No. 15-2206

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

Related Case Nos. 15-2217, 15-2230, 15-2234,
15-2272, 15-2273, 15-2290, 15-2291, 15-2292, 15-2294, 15-2304 and 15-2305

---

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY LITIGATION

---

APPELLANTS: CRAIG HEIMBURGER AND DAWN HEIMBURGER

---

OPENING BRIEF FOR OBJECTORS-APPELLANTS
CRAIG HEIMBURGER AND DAWN HEIMBURGER

---

*/s/ Christopher A. Bandas*

Christopher A. Bandas
Bandas Law Firm, PC
500 N. Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401
Telephone:   (361) 698-5200
Facsimile:    (361) 698-5222
cbandas@bandaslawfirm.com

*ATTORNEYS FOR APPELLANTS
CRAIG HEIMBURGER AND
DAWN HEIMBURGER*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

STATEMENT OF JURISDICTION .................................................................. 1

STATEMENT OF THE ISSUES ....................................................................... 1

RELATED CASES AND PROCEEDINGS ........................................................ 2

RULE 28(i) JOINDER...................................................................................... 2

STATEMENT OF THE CASE .......................................................................... 3

STATEMENT OF FACTS ................................................................................. 3

SUMMARY OF THE ARGUMENT ................................................................. 4

ARGUMENT .................................................................................................... 4

I.   Standard of Review .................................................................................. 4

II.  The Requirements of Rule 23 Were Not Met............................................ 5

     A.   Adequacy was Absent ...................................................................... 5

     B.   *Amchem* dispositively demonstrated an intra-clas conflict ........................ 7

     C.   Typicality was Absent ...................................................................... 10

     D.   The Upside-Down Class Representative Selection Independently
         Precluded Class Certification .......................................................... 11

     E.   Commonality was Absent ................................................................. 11

     F.   Predominance was Absent ................................................................. 14

CONCLUSION ................................................................................................ 17

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(a)(7)(C) ................. 19

CERTIFICATE OF BAR MEMBERSHIP ...................................................... 20

PROOF OF SERVICE ...................................................................................... 21

# TABLE OF AUTHORITIES

## **CASES**

*Accord Steering Comm. v. Exxon Mobil Corp.,*
   461 F.3d 598 (5th Cir. 2006). ..................................................................... 14

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) ................................................................ 6, 7, 8, 9, 10, 13

*American Express Co. v. Italian Colors Restaurant,*
   133 S. Ct. 2304 (2013) ................................................................................... 5

*Berger v. Compaq Computer Corp.,*
   257 F.3d 475 (5th Cir. 2001) ......................................................................... 6

*Comcast Corp., v. Behrend,*
   133 S.Ct. 1426 (2013) ................................................................................... 15

*Dewey v. Volkswagen AG,*
   681 F.3d 170 (3d Cir. 2012). .................................................................. 6, 8, 9

*Eubank v. Pella Corp.,*
   753 F.3d 718 (7th Cir. 2014) ....................................................................... 11

*Georgine* v. *Amchem Prods.,*
   83 F.3d 610 (3d Cir. 1996) ..................................................................... 13, 16

*Hansberry v. Lee,*
   311 U.S. 32 (1940) ....................................................................................... 10

*In re Am. Medical Sys.,*
   75 F.3d 1069 (6th Cir. 1996) ....................................................................... 10

*In re Asbestos Litig.,*
   90 F.3d 963 (5th Cir. 1996) (Smith J., dissenting Stet.) ........................... 7, 12

*In re Katrina Canal Breaches Litig.,*
   628 F.3d 185 (5th Cir. 2010) ......................................................................... 6

*In re Literary Works in Electric Databases Copyright Litigation,*
654 F.3d 242 (2d Cir. 2011) ............................................................... 9

*In re Monster Worldwide, Inc. Secs. Litig.,*
251 F.R.D. 132 (S.D.N.Y. July 14, 2008) ..................................... 11

*In re National Football League Players Concussion Injury Litigation,*
775 F.3d 570 (3rd Cir. 2014) ............................................................ 2

*In re Vitamins Antitrust Class Actions,*
215 F.3d 26 (D.C. Cir. 2000). ......................................................... 7

*M D. v. Perry,*
675 F.3d 832 (5th Cir. 2012) ..................................................... 11, 13

*Madison v. Chalmette Ref , L.L.C.,*
637 F.3d 551 (5th Cir. 2011) ......................................................... 15

*Mullen v. Treasure Chest Casino, L.L.C.,*
186 F.3d 620 (5th Cir. 1999), *cert. denied,* 528 U.S. 1159 (2000) ................................. 12

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999) ........................................................ 7, 10, 11, 12, 13, 15

*Reynolds v. Beneficial Nat'l Bank,*
288 F.3d 277 (7th Cir. 2002) ........................................................... 8

*Sullivan v. DB Investments, Inc.,*
667 F.3d 273 (3rd Cir. 2011) ........................................................... 4

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ............................................................. 11, 13

## **STATUTES**

28 U.S.C. §1291………………………………………………………1

28 U.S.C. §1332(d)………………………………………………...1

## OTHER AUTHORITIES

Alexandra N. Rothman, *Note: Bringing an End to the Trend: Cutting Judicial "Approval" and "Rejection" out of Non- Class Mass Settlement,* 80 FORDHAM L. REV. 319, 324 (2011) (citing *In re Vioxx Prods. Liab. Litig.,* MDL No. 1657, 239 F.R.D. 450, 460-63 (E.D. La. 2006) ...................................................................................... 17

*Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. REV. 97, 132 (2009) ......... 14

Deborah R.Hensler, *Has the Fat Lady Sung? The Future of Mass Toxic Torts,* 26 REV. LITIG. 883 (2007) ................................................................................................ 17

Martin L.C.Feldman, *Predominance and Products Liability Class Actions: An Idea Whose Time Has Passed?,* 74 TUL. L. REV. 1621 (2000)...................................................... 17

*Ortiz,* 58 U. KAN. L. REV. 775, 806 (2010) .................................................................... 17

Thomas E. Willging &Emery G. Lee III, *From Class Actions to Multidistrict Consolidations: Aggregate Mass-Tort Litigation* .................................................... 17

## RULES

F.R.A.P. 28(i).................................................................................................... 2, 3

Fed. R. Civ. P. Rule 23.............................................................................. 1, 4, 5, 6, 7, 17

Fed. R. P. 23(a)(3) ............................................................................................. 10

Fed. R. P. 23(a)(4).................................................................................. 5, 6, 8, 9, 10, 11

Fed. R. P. 23(b)(l)(B)............................................................................................ 9

Fed. R. Civ. P. 23(e) ............................................................................................ 7

iv

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case under 28 U.S.C. §1332(d) based upon diversity of citizenship, and because the total amount in controversy exceeds $5,000,000.

This Court has jurisdiction pursuant to 28 U.S.C. §1291.  The district court entered its order and final judgment on April 22, 2015.  A. 40; *see also* A. 58. Appellants Craig and Dawn Heimburger (the "Heimburger Appellants") timely filed their notice of appeal on May 13, 2015.  A. 1.

## STATEMENT OF THE ISSUES

1.  Did the district court err in certifying the settlement class in the absence of the requisite showing that the elements of Rule 23 of the Federal Rules of Civil Procedure were met?  This issue was raised in the Heimburger Appellants' Objection and in the Joinder and Notice of Re-Urging Objection of Craig Heimburger and Dawn Heimburger. ECF 6230 and 6505.  It was overruled in the district court's opinion.  A. 58.

2.  As set forth below, the Heimburger Appellants join in the opening briefs including the statements of issues of their co-appellants.  These issues were raised by the Heimburger Appellants in the district court directly and/or through joinder in the objections of the co-appellants.  ECF 6230 and 6505. These were overruled in the district court's opinion.  A. 58.

1

## RELATED CASES AND PROCEEDINGS

This appeal (No. 15-2206) has been consolidated with eleven other appeals from the district court's approval order. Several appeals have been filed from the district court's settlement approval. Nos. 15-2217, 15-2230, 15-2234, 15-2272, 15-2273, 15-2290, 15-2291, 15-2292, 15-2294, 15-2304 and 15-2305. The Court consolidated the appeals in an order entered on June 16, 2015. This case was before this Court previously on an appeal of a preliminary order. *See In re National Football League Players Concussion Injury Litigation,* 775 F.3d 570 (3rd Cir. 2014).

## RULE 28(i) JOINDER

Pursuant to F.R.A.P. 28(i), the Heimburger Appellants respectfully request joinder in the following opening briefs:

1. Brief of Appellants Cleo Miller, Judson, Flint, Elmer Underwood, Vincent Clark, Sr., Ken Jones, Fred Smerlas, Jim Rourke, Lou Piccone, James David Wilkins, II, and Robert Jackson, Case No. 15-2217;

2. Initial Brief of the Gilchrest Estate, Case No. 15-2290;

3. Brief of Appellants Jimmie H. Jones, Ricky Ray, and Jesse Solomon, Case No. 15-2291;

4. Brief for the Appellants Liyongo Patrise Alexander, Charlie Anderson, Charles E. Arbuckle, Cassandra Bailey, Ben Bronson, Curtis Ceasar, Jr., Larry Centers, Darrell Colbert, Harry Colon, Christopher Crooms, W. Jerry Davis, Tim Denton, Michael Dumas, Corris Ervin, Doak Field, Baldwin

2

Malcolm Frank, Derrick Frazier, Murray E. Garrett, Clyde P. Glosson, Roderick W. Harris, Wilmer K. Hicks, Jr., Patrick Jackson, Gary Jones, Ryan McCoy, Jerry James Moses, Anthony E. Newsom, John Owens, Robert Pollard, Derrick Pope, Glenell Sanders, Thomas Sanders, Dwight A. Scales, Todd Scott, Frankie Smith, Jermaine Smith, Tyrone Smith and James A. Young, Sr., Case No. 15-2273;

5. Brief for Appellant Andrew Stewart, Case No. 15-2292; and

6. Brief of Objectors-Appellants Alan Faneca, Roderick "Rock" Cartwright, Jeff Rohrer and Sean Considine, Case No. 15-2304.

This joinder is made in the interest of judicial economy and to reduce the amount of duplicate briefing filed in this case.

## STATEMENT OF THE CASE

This appeal arises from the settlement of a class action lawsuit against the NFL by a class of retired NFL players for injuries caused by traumatic brain injury sustained while playing in the NFL. In the interest of judicial economy, the statements of the case provided by the co-appellants whose briefs are being joined under F.R.A.P. 28(i) are relied upon by the Heimburger Appellants.

## STATEMENT OF FACTS

In the interest of judicial economy, the statements of facts provided by the co-appellants whose briefs are being joined under F.R.A.P. 28(i) are relied upon by the Heimburger Appellants. It is virtually certain that objector and retired NFL player

3

Craig Heimburger suffers from CTE. ECF 6230. Heimburger, who is only 37, is already suffering personality changes, cognitive impairment, and hypopituitarism after a career as an offensive lineman that required him to play through concussions. *Id.* Heimburger – an offensive lineman who played years in the NFL and in NFL-operated leagues, suffering in-game concussions – was required by team doctors to play through, who will almost certainly be diagnosed with CTE after the preliminary approval date – will have any compensation from the settlement reduced 40% to 60% because he will not get full credit for a fifteen-game season and preseason in NFL Europe or his time in full-contact practices and playing in preseason games. *Id.*

## SUMMARY OF THE ARGUMENT

The requirements of Rule 23 were not met in the court below and therefore the certification of the settlement class was in error and should be reversed by this Court. Specifically, the requirements of adequacy, predominance, typicality and commonality are all lacking and this is a fatal flaw in the decision of the district court to approve the settlement. In addition, the Heimburger Appellants join in the arguments of their co-objectors.

## ARGUMENT

### I.    Standard of Review

A district court's approval of a class action settlement is reviewed for abuse of discretion. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 295 (3rd Cir. 2011), *cert. denied,*

132 S. Ct. 1876 (2012).  Whether the lower court used the correct legal standard is reviewed *de novo.  Id.*

## II.    The Requirements of Rule 23 Were Not Met

Rule 23  "imposes stringent requirements for certification that in practice exclude most claims." *American Express Co. v. Italian Colors Restaurant,* 133 S. Ct. 2304 (2013).  The settlement classes do not meet these stringent requirements and the requirements of Rule 23 were not met.

### A.    Adequacy was Absent

Rule 23(a)(4) of the Federal Rules of Civil Procedure requires a showing of adequacy of representation in order to certify a class.  The Heimburger Appellants join in the briefs of their co-appellants (especially the brief of Alan Faneca, Roderick "Rock" Cartwright, Jeff Rohrer and Sean Considine, Case No. 15-2304) on this issue but in addition raise the following arguments on adequacy.

Two settlement classes are not enough for a fact-pattern this complex (and even if it were, the separate representation is questionable when each of the attorneys for each of the subclasses separately represented individual clients in the other subclass and did not ever disclose that conflict). There are many intra-class conflicts, but the one affecting Craig Heimburger personally is particularly egregious: NFL Europe players had their rights  bargained away to increase the recovery to more prestigious players who were valued enough to be given an offseason to recover and not have to play in both a spring season and a fall season. The failure to credit this

5

service time is especially problematic because it falls most heavily on journeymen players who (1) faced especially brutal practices in an attempt to prove themselves worthy of staying on the team and (2) are less likely to have five years of full NFL service time.   None of the class representatives played for NFL Europe, and even if they had, separate representation would have been required.  *Dewey v. Volkswagen AG,* 681 F.3d 170 (3d Cir. 2012).   Indeed, this settlement is *worse* for the prejudiced unrepresented subclass than the one in *Dewey.*  In *Dewey,* the disfavored unrepresented and uncertified subclass still had a right of recovery, but the *hypothetical* prejudice to the disfavored subgroup required class decertification in the absence of separate representation-even though there was an explicit finding by the district court, affirmed by the Third Circuit, that all of the subgroups were treated fairly and received adequate relief.

Moreover, put simply, the intra-class equity requirement cannot be met when class members suffered a wide variety of diverse injuries in diverse circumstances.  *In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 193-194 (5th Cir. 2010). Settlement approval and the U.S. Constitution require a finding of adequacy of class representatives under Rule 23(a)(4)

The Rule 23 adequacy inquiry is intended to uncover "conflicts of interest between the named plaintiffs and the class they seek to represent." *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479-80 (5th Cir. 2001) *(quoting Amchem Prods. v. Windsor,*

6

521 U.S. 591, 625 (1997)). The settling parties cannot meet this constitutional requirement. For this independent reason, the class should not have been certified.

### B.    *Amchem* dispositively demonstrated an intra-class conflict

It "is obvious after *Amchem* that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under [what is now Rule 23(c)(5)], with separate representation to eliminate conflicting interests of counsel." *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 856 (1999) (citing, *inter alia, Amchem,* 521 U.S. 627).

A "district court has a duty under Fed. R. Civ. P. 23(e) to ensure that [a settlement] is fair, adequate, and reasonable and is not the product of collusion between the parties. Thus Rule 23(e) provides a check against settlement dynamics that may 'lead the negotiating parties even those with the best intentions-to give insufficient weight to the interests of at least some class members.'" *In re Vitamins Antitrust Class Actions,* 215 F.3d 26, 30 (D.C. Cir. 2000). Unfortunately, insufficient weight was given to multiple groups of class members. This precludes certification as a matter of law. As Judge Smith noted in dissent in *In re Asbestos Litigation,* class "representative must possess the same interest and suffer the same injury as the class members and must be aligned in interest such that no conflicts exist between the

representative and any discrete subclasses within the broader class he purports to represent. *Amchem* demands a structural assurance of fair and adequate representation for the diverse groups and individuals affected." 134 F.3d 668, 677 (5th Cir. 1999) (Smith, J., dissenting). That dissent was vindicated when the Supreme Court reversed the Fifth Circuit for just this reason in *Ortiz,* 527 U.S. 815.

As a first principle, it is "altogether proper" to conduct a "close inspection" of the terms of settlement when evaluating whether adequacy is met. *See Amchem v. Windsor,* 521 U.S. 591, 619-20 (1997). Unless the stakes are "modest," a settlement paying differently situated class members the same is a "defect" creating an unsupportable intraclass "conflict of interest." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 282 (7th Cir. 2002) (citing, *inter alia, Amchem).*

Where a class fails on a structural level, it must be vacated without regard to whether "the class members' interests were not actually damaged." *Dewey v. Volkswagen AG,* 681 F.3d 170, 189 n.19 (3d Cir. 2012). When a portion of the class lacks representation, the Rule 23(a)(4) failure cannot be solved by claiming "no harm, no foul"—and it's far from clear here that there was no harm, given the prejudice to (1) class members who played in NFL Europe but do not have five years' "Eligible Seasons", and (2) class members who suffer cognitive injury (such as personal changes or hypopituitarism) that is not compensated by the settlement. Too, the settlement irrationally treats three regular-season games as a kicker or punter as identical in service time to a full twenty-game preseason and regular season played by a lineman who is

getting hit on nearly every play-with the spectrum of quarterbacks, defensive backs, wide receivers, linebackers, and running backs in between.

Any attempt to distinguish *Amchem* fails. That this class is smaller than the *Amchem* class does not preclude a Rule 23(a)(4) conflicts problem; the issue is the scope of the class, and nothing in *Amchem* turned on a threshold size of the class-and in any event a class of thousands of people is hardly small. That this is supposedly an uncapped fund  (assuming the NFL still exists in a decade's time) is irrelevant: the district court in *Amchem* explicitly found that Amchem's "assets suffice to pay claims under the settlement." 521 U.S. at 626. The Supreme Court found that irrelevant: "Although this is not a 'limited fund' case certified under Rule 23(b)(l)(B), the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability." *Id.* at 626-27. The same is true here. *Accord Dewey, supra* (decertifying class even though parties alleged that limited fund could have compensated disfavored, uncertified, and unrepresented subgroup of settlement class).

*In re Literary Works* provides another example directly on point. 654 F.3d 242 (2d Cir. 2011). Class counsel attempted to negotiate compensation from Google for three separate "categories" of class members in a single settlement class action. *Id.* 246. Each category received a different damages formula. *Id.* As in this case, each class representative "served generally as representative for the whole, not for a separate constituency." *Id.* at 251 (quoting *Amchem,* 521 U.S. at 627). The Second Circuit did not dispute that each category had differently valued claims; nor did it

9

make any finding that the compensation negotiated for any category was unfair or inadequate. Nevertheless, the settlement was stricken on Rule 23(a)(4) grounds: the class representatives "cannot have had an interest in maximizing compensation for *every* category." *Id.* at 252 (emphasis in original). *See generally Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999). This case is in a considerably worse posture than *Literary Works,* which had only three separate categories that were relatively similar in nature.

### C.    Typicality was Absent

Similarly, because of the adequacy problems discussed above, and the predominance and commonality problems discussed below, the class representatives do not satisfy typicality. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members. *In re Am. Medical Sys.,* 75 F.3d 1069, 1083 (6th Cir. 1996). These representative requirements are rooted in constitutional due process concerns because of the preclusive effect of a class action judgment or settlement. *See Hansberry v. Lee,* 311 U.S. 32 (1940). As relatively successful players, neither Wooden nor Turner played in NFL Europe nor accumulated fewer than five "Eligible Seasons." While Wooden has ALS, neither Wooden nor Turner have the injuries manifested by Heimburger, which may or may not ever ultimately qualify for a compensation category given the limitations of the neurological criteria identified in

10

the brief of Alan Faneca, Roderick "Rock" Cartwright, Jeff Rohrer and Sean Considine, Case No. 15-2304.

### D. The Upside-Down Class Representative Selection Independently Precluded Class Certification

The procedural posture of this case provides an independent reason why it was inappropriate to certify as a class action. First, there were Plaintiffs' Executive and Steering Committees with hundreds of individual personal-injury cases (including Heimburger's, see Docket No. 9, Short-Form Complaint, see Docket No. 856; then there were settlement negotiations; and only then did the PEC/PSC select class representatives to ratify a *fait accompli*. When this happens, it makes a mockery of the class action process, and Rule 23(a)(4) adequacy cannot be satisfied: the "willing pawn of counsel" cannot be appointed class representative, because they cannot meaningfully supervise class counsel when they have been handpicked to rubber-stamp class counsel's decisions. *In re Monster Worldwide, Inc. Secs. Litig.,* 251 F.R.D. 132, 135-36 (S.D.N.Y. July 14, 2008); *cf Eubank v. Pella Corp.,* 753 F.3d 718 (7th Cir. 2014) (class counsel selecting new representatives to replace ones objecting to settlement). *Cf. Ortiz,* 527 U.S. at 857 n.31.

### E. Commonality was Absent

The Supreme Court's 2011 decision in *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011), marked a sea change in the law of commonality. *E.g., M D. v. Perry,* 675 F.3d 832, 839-40 (5th Cir. 2012). The bygone lenient (a)(2) standard of some circuits

simply required "at least one issue, the resolution of which will affect all or a significant number of class members." *Mullen v. Treasure Chest Casino, L.L.C.,* 186 F.3d 620, 625 (5th Cir. 1999), *cert. denied,* 528 U.S. 1159 (2000). Post *Wal-Mart,* however, commonality requires the plaintiff to demonstrate that the class members have "suffered the same injury." *M D.,* 675 F.3d at 840 (quoting *Wal-Mart,* 131 S. Ct. at 2541) (internal quotation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart,* 131 S. Ct. at 2541. The problem here is that class members have been injured in unique and disparate ways, they have not "suffered the same injury" even though they may have all "suffered a violation of the same provision of law." Class members have individualized experiences (reduced in procrustean to service time regardless of the number of damaging hits they suffered) and individualized manifestations of CTE (only some of which are compensated by the settlement).

The common questions that matter for determining commonality and cohesion are those "that qualify each class member's case as a genuine controversy." *Amchem,* 521 U.S. at 623. There is a further problem of bringing a class action attempting to waive rights regarding *future injury* that has not yet manifested. There is considerable doubt that exposure to the cause of a potentially latent injury alone is sufficient to overcome the threshold for Article III standing. *See, e.g., Ortiz,* 527 U.S. at 831; *Amchem,* 521 U.S. at 611-12; *In re Asbestos Litig.,* 90 F.3d 963, 1015 (5th Cir. 1996) (Smith J., dissenting) ("The majority's decision to affirm certification in

12

this case, however, obligates it to address *sua sponte* if necessary the troubling jurisdictional problems raised by the district court's approval of the settlement."), *rev'd, Ortiz,* 527 U.S. 815 (1998); *Georgine* v. *Amchem Prods.,* 83 F.3d 610, 635-38 (3d Cir. 1996) (Wellford J., concurring) (finding an Article III impediment to exposure-only class members), *aff'd, Amchem* 521 U.S. 591 (1997). This is problematic for someone like Heimburger, who, might, for example, if he knew for sure that he would be diagnosed with ALS before 2022, be willing to accept the settlement benefits if the settlement gave him full credit for his service time without deduction. But in a world where Heimburger cannot know whether he will suffer future injuries that fit within category definitions or future injuries that fall outside of category definitions, he cannot make an intelligent decision whether to stay in or opt out. He stays in the hopes that his objection fixes the problems with the settlement, so that there is a settlement that fairly compensates him and players similarly situated to him.

Abstracting to this degree is akin to the exact analytical efforts rejected in *Wal-Mart* and *M D.* Just as Title VII injuries can occur in varied ways *(Wal-Mart),* and injuries from a dysfunctional foster care system can occur in varied ways *(M D.),* personal injuries suffered here will manifest in varied ways and have a variety of potential causes. Heimburger, who clearly suffered head trauma through multiple in-

13

game concussions and migraines throughout his career, is differently situated than a player without that injury history.[1]

A court must "'focus' on dissimilarities among the proposed class members 'in order to determine whether there is even a single common question.'" *M D.,* 675 F.3d at 841 (quoting *Wal-Mart,* 131 S.Ct. at 8556). "What matters to class certification ...is not the raising of common 'questions'--even in droves  but, rather the capacity of a class wide proceeding to generate common *answers*.... Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart,* 131 S. Ct. at 2551 (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L. REV. 97, 132 (2009)). The dissimilarities in the type, kind and magnitude of injury suffered by medical benefit class members undermined the ability to generate any common answer via a class proceeding.

## F.    Predominance was Absent

"Even if Rule 23(a)'s commonality requirement may be satisfied by ...shared experience, the predominance criterion is far more demanding." *Amchem,* 521 U.S. at 623-24. *Accord Steering Comm. v. Exxon Mobil Corp.,* 461 F.3d 598, 601-02, 603 (5th Cir. 2006). "The predominance inquiry requires that questions of law or fact

---

[1] Notably, the district court in *Amchem* also relied upon the commonality of the "exposure" question. 521 U.S. at 623. Justice Ginsburg's opinion held that even assuming that it satisfied commonality, such an issue would not satisfy (b)(3) predominance: "Given the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about the health consequences of asbestos exposure cannot satisfy the Rule  23(b)(3) predominance standard." *Id.* at 624.

14

common to members of the class predominate over any questions affecting only individual members." *Steering Comm.* 461 F.3d at 601. The "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623.

In *Steering Comm.,* the Fifth Circuit rejected certification of a class of individuals allegedly exposed to toxic smoke from fire at a chemical plant. Significantly, "it [was] clear from the record that the damages claims [were] not subject to any sort of formulaic calculation." 461 F.3d at 602; *accord Comcast Corp., v. Behrend,* 133 S.Ct. 1426, 1433 (2013) (without a methodology to calculate damage measurement, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."); *Madison v. Chalmette Ref., L.L.C.,* 637 F.3d 551 (5th Cir. 2011). So too here, where the damages claims are individualized and not subject to any sort of meaningful, organic, formulaic calculation. Instead, there is merely the artificial and procrustean matrix designed by class counsel. Indeed, once again, this case is worse situated than *Steering Committee* or *Madison,* each of which alleged injury from a single incident; here, class members have individualized injury histories and different experiences with concussions and head injuries.

That this is a settlement class makes no difference. *Amchem,* 521 U.S. at 620 (expressing need for "undiluted, even heightened attention" to certification criteria in settlement context); *Ortiz,* 527 U.S. at 844 n.20. "Proposed settlement classes sometimes warrant more, not less, caution on the question of certification." *Amchem,*

15

521 U.S. at 620 n.16 (citing *Georgine v. Amchem Prods.,* 83 F.3d 610, 626-35 (3d Cir. 1996)).

*Amchem,* consistent with the Advisory Committee's "call for caution when individual stakes are high and disparities among class members are great," concluded that a putative class of mass tort victims failed to satisfy (b)(3) predominance. *Amchem,* 521 U.S. at 624. *Amchem's* reasoning can be imported almost seamlessly to the facts of this case. Predominance is not satisfied when:

> "[c]lass members were exposed to [different sources of injury], for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only [superficial damage], while others suffer from [severe and chronic ailments] …Each has a different [health history], a factor that complicates the causation inquiry. The exposure-only plaintiffs especially share little in common with each other or with the presented injured class members. It is unclear whether they will contract [CTE-related symptoms] and, if so, what disease each will suffer. They will also incur different medical expenses because their monitoring and treatment will depend on singular circumstances and individual medical histories"

*Id.* (quoting *Georgine,* 83 F.3d at 626). While the parties are to be commended for creating a future-injury and a past-injury subclass, curing one of the many failings of *Amchem,* this was necessary, but not sufficient-- even if one assumes that the separate representation was really separate.

16

The consensus against mass-tort personal-injury class actions is so weighty that it spawned the present generation of non-class aggregation litigation. *See* Thomas E. Willging & Emery G. Lee III, *From Class Actions to Multidistrict Consolidations: Aggregate Mass-Tort Litigation after Ortiz,* 58 U. KAN. L. REV. 775, 806 (2010); *see also* Alexandra N. Rothman, *Note: Bringing an End to the Trend: Cutting Judicial "Approval" and "Rejection" out of Non- Class Mass Settlement,* 80 FORDHAM L. REV. 319, 324 (2011) (citing *In re Vioxx Prods. Liab. Litig.,* MDL No. 1657, 239 F.R.D. 450, 460-63 (E.D. La. 2006) (denying class certification under Rule 23(b)(3) because common issues of fact did not predominate) and Martin L.C. Feldman, *Predominance and Products Liability Class Actions: An Idea Whose Time Has Passed?,* 74 TUL. L. REV. 1621 (2000) (noting the resistance to certification under Rule 23(b)(3) for products liability cases)). "This progression away from the class action, particularly in the context of mass torts, is an oft-told story." Rothman, *supra,* at 327 n.53; *see also* Deborah R. Hensler, *Has the Fat Lady Sung? The Future of Mass Toxic Torts,* 26 REV. LITIG. 883 (2007) (discussing the rising future in non-class aggregative disposition of mass toxic torts in lieu of class actions). For all these reasons the district court erred in certifying this class action in the absence of the required elements under Rule 23 addressed above.

## CONCLUSION

For the foregoing reasons, this Court should reverse the rulings of the district court and remand this case for further proceedings.

17

DATED:    August 24, 2015

By:    */s/ Christopher A. Bandas*
Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401-0353
(361) 698-5200 Telephone
(361) 698-5222 Facsimile
*Attorneys for Class Members and Appellants*
*Craig Heimburger and Dawn Heimburger*

**CERTIFICATE OF COMPLIANCE**
**WITH FED. R. APP. 32(a)(7)(C)**

Pursuant to FRAP 32(a)(7)(C), I hereby certify that this brief was produced in Garamond 14-point type and contains no more than 6300 words.

I further certify that the electronic copy of this brief filed with the Court is identical in all respects to the hard copy filed with the Court, and that the electronic version is virus free as confirmed by the Vipre Business 2015 program.

Dated: August 24, 2015                    Respectfully submitted,


By:    */s/ Christopher A. Bandas*
       Christopher A. Bandas
       BANDAS LAW FIRM, P.C.
       500 North Shoreline Blvd., Suite 1020
       Corpus Christi, Texas 78401-0353
       (361) 698-5200 Telephone
       (361) 698-5222 Facsimile
       *Attorneys for Class Members and Appellants*
       *Craig Heimburger and Dawn Heimburger*

19

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that pursuant to Local Appellate Rule 46.1 that I was admitted to the Bar of the United States Court of Appeals for the Third Circuit on July 1, 2008, and remain a member in good standing of the Bar of this Court.

Dated:  August 24, 2015

By:    */s/ Christopher A. Bandas*
      Christopher A. Bandas
      BANDAS LAW FIRM, P.C.
      500 North Shoreline Blvd., Suite 1020
      Corpus Christi, Texas 78401-0353
      (361) 698-5200 Telephone
      (361) 698-5222 Facsimile
      *Attorneys for Class Members and Appellants*
      *Craig Heimburger and Dawn Heimburger*

## PROOF OF SERVICE

I, Christopher A. Bandas, do hereby certify that, on August 24, 2015, I filed the foregoing Brief of Heimburger Appellants via ECF filing system for the United States Court of Appeals for the Third Circuit, and that as a result each counsel of record received an electronic copy of this Brief on August 24, 2015.

By:    */s/ Christopher A. Bandas*
Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401-0353
(361) 698-5200 Telephone
(361) 698-5222 Facsimile
*Attorneys for Class Members and Appellants*
*Craig Heimburger and Dawn Heimburger*